UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>William J. Pandolfi</u>,
     Plaintiff

     v.                          Civil No. 05-cv-165-SM
                                     Opinion No. 2008 DNH 135
<u>Ashbelt T. Wall, Director of the</u>
<u>RI Adult Correctional Facility</u>,
     Defendant

**O R D E R**

In March of 1998, after his first trial resulted in a hung jury, William Pandolfi was convicted of one count of aggravated felonious sexual assault and two misdemeanor counts of sexual assault upon a 14 year girl.  The charges arose out of an incident nearly ten years earlier, during which Pandolfi restrained his victim, threatened (and cut) her with a razor blade, gagged her by placing duct tape over her mouth, slapped her repeatedly in the face, and raped her.  On the felony count, Pandolfi was sentenced to a term of 7½ to 15 years in the New Hampshire State Prison.  On the misdemeanor counts, he was sentenced to terms of 12 months imprisonment, consecutive to each other and the felony sentence.  The sentencing court also recommended that he complete drug and alcohol treatment, anger management counseling, and the state prison's sexual offender program.

Pandolfi is currently incarcerated at the Rhode Island Adult Correctional Institution, in Cranston, Rhode Island.  He brings this habeas corpus action challenging his criminal convictions as well as his sentences.  The State objects.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  Alternatively, habeas relief may be granted if the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  See also Williams v. Taylor, 529 U.S. 362, 399 (2000).

But, when a state's highest court has not addressed the substance of the petitioner's claims on the merits, this court considers those claims de novo.  See, e.g., Gruning v. Dipaolo, 311 F.3d 69, 71 (1st Cir. 2002) (holding that the deferential standard of review prescribed by section 2254(d) does not apply to a state inmate's habeas petition when the state appellate court failed to address the petitioner's constitutional claim); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) ("AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to the state court on an issue that the state court did not address.").

With those principles in mind, the court turns to Pandolfi's petition.

## Discussion

As construed by the Magistrate Judge, Pandolfi's petition raises ten claims, seven of which have been properly exhausted — counts one through three, five through seven, and ten.  See Magistrate Judge's Order dated October 3, 2006 (document no. 22). Pandolfi withdrew the claims advanced in counts four, eight, and nine.  In his surviving claims, Pandolfi alleges that:

The trial judge interfered with Pandolfi's trial and
pretrial proceedings by making forensic and scientific
findings that resulted in improperly admitted evidence;

Pandolfi's trial counsel was ineffective when he
failed to object to or confront certain testimony,
neglected to challenge the grand jury proceedings,
failed to obtain certain discovery, waived Pandolfi's
probable cause hearing without his consent, and failed
to present evidence favorable to Pandolfi at trial;

Pandolfi's appellate counsel was ineffective when he
filed appeal paperwork on Pandolfi's behalf while
acting under a conflict of interest;

The prosecutor engaged in misconduct by knowingly
presenting false evidence to the grand jury;

Pandolfi was denied the right to confront and
cross-examine witnesses against him when the judge
denied him access to certain impeachment evidence
(i.e., prior statements and testimony of the victim);

Pandolfi's sentence is vindictive and unsupported by
evidence in that it is based on unsupported allegations
against him, and because it was based on a prosecutor's
recommendation that increased after trial from what had
been offered during plea negotiations; and, finally,

Pandolfi is being subjected to an unconstitutional term
of imprisonment because the sentencing judge gave him
an extended sentence and because he is being punished
for refusing to plead guilty and, instead, exercising
his constitutional right to a jury trial.

<u>See</u> Magistrate Judge's Order dated June 7, 2005 (document no. 5).


I.     <u>The State's Motion to Dismiss</u>.

The State moves to dismiss those counts in which Pandolfi

asserts that he is being (or has been) denied the right to parole

4

and/or good time credits.  As the State correctly notes, the
Magistrate Judge already addressed those claims and held that
they are not viable in the context of a habeas petition (that is,
they do not raise federal constitutional issues).

> To the extent that Pandolfi intends to state a
> violation of a right to be released on parole, such a
> claim is not cognizable in a federal habeas petition.
> It is well-settled that a convicted person has no
> constitutional right to be conditionally released
> before the expiration of a valid sentence.  See
> Greenholtz v. Inmates of Neb. Penal & Corr. Complex,
> 442 U.S. 1, 7 (1979).  A valid conviction, with all its
> procedural safeguards, extinguishes that liberty right.
> Id.; see also Meachum v. Fano, 427 U.S. 215, 224
> (1976).  If Pandolfi's amended petition continues to
> include a habeas claim for a violation of his right to
> be granted parole, such a claim will be dismissed when
> the amended petition is reviewed by this Court.

Order dated June 7, 2005 at 5 n.1.  Accordingly, to the extent
counts seven and ten of the petition advance claims that Pandolfi
is being denied the right good time credits and/or to be released
on parole, those counts are dismissed and defendant's motion
(document no. 38) is granted.  What remains, then, is that
portion of count seven in which Pandolfi claims that his sentence
was enhanced based on unsupported and unproven allegations.


II.  The State's Motion for Summary Judgment.

     The State asserts that, notwithstanding the Magistrate
Judge's preliminary finding that Pandolfi exhausted each of the

remaining claims, he actually failed to raise most, if not all, of those issues on appeal to the New Hampshire Supreme Court. And, says the State, because Pandolfi is now procedurally barred from raising those claims in state court, and because he cannot demonstrate either "cause and prejudice" for his failure to present those claims or that "a fundamental miscarriage of justice" would result if this court did not address them (i.e., that he is actually innocent of the crimes of conviction), he is not entitled to habeas relief.

The State may, indeed, be correct — it is difficult to tell, given the complex procedural history of this case and the numerous state court opinions resulting from the parallel tracks of state proceedings (i.e., Pandolfi's direct appeal to the state supreme court of his convictions, a remand to the trial court on one issue, and a series of collateral attacks upon the convictions in the trial court, some of which were appealed to the state supreme court).  Adding to the confusion is the fact that Pandolfi's filings are rambling, non-responsive and, at best, difficult to decipher — understandable, perhaps, given his pro se status.  Nevertheless, his filings are decidedly unhelpful.  Consequently, the most prudent and efficient way to

address Pandolfi's claims is to consider them de novo, on the
merits.  See 28 U.S.C. § 2254(b)(2).


A.   Evidentiary Claims

Pandolfi first claims that the trial judge made improper
"forensic and scientific findings," Petition (document no. 1) at
10, and allowed the prosecution to introduce inadmissible
evidence against him.  Specifically, Pandolfi asserts that the
trial court erred in allowing the prosecution to introduce
photographs of the scar on the victim's chest – a scar she said
Pandolfi caused when he cut her with a razor blade.


To prevail on his claim that the trial court's improper
admission of evidence entitles him to federal habeas corpus
relief, Pandolfi bears a substantial burden.  As the court of
appeals for this circuit has observed, "[t]o be a constitutional
violation, a state evidentiary error must so infuse the trial
with inflammatory prejudice that it renders a fair trial
impossible." Petrillo v. O'Neill, 428 F.3d 41, 44 n.2 (1st Cir.
2005) (citation omitted).  See also Evans v. Verdini, 466 F.3d
141, 145 (1st Cir. 2006); Subilosky v. Callahan, 689 F.2d 7, 10
(1st Cir. 1982).

The State says (and, as far as the court can tell, Pandolfi does not seem to dispute[1]) that the relevant factual background to Pandolfi's evidentiary claim is as follows:

> Prior to the first trial, Pandolfi's counsel filed a motion seeking to compel [the victim] to submit to additional photographing of the scar on her chest.  At a hearing on October 20, 1997, defense counsel argued that the additional photographs were necessary because his expert had said that the existing photographs were insufficiently clear for him to render an opinion about whether the scar was consistent with [the victim's] description of the injury and its cause.  The court (Mohl, J.) looked at the photographs, and found that the scar was "definitely observable," and that based on his "common experience" in "dealing with scars," and "without a great degree of medical, scientific background," it appeared to him to be the type of scar that would have been left by a "thin, not deep cut that would leave probably a blood scar initially, and then could go to a faint line."  Defense counsel then argued that the expert needed photographs of the entire scar, not just the part around [the victim's] bra that was visible in the existing photographs.  The court found that new photographs would most likely not be any clearer, that an examination of [the victim] would probably be the only way for an expert to determine the exact nature of the scar, and that the injury to [the victim] was not an element of the offense.  The State objected to a physical examination.  The court then held that since the photographs were clear enough for it to see and evaluate, they were sufficient for the expert to do the same.

---

[1]   See Petitioner's motion for summary judgment (document no. 35); petitioner's supplemental motion (document no. 67); petitioner's objection to summary judgment (document no. 44); and petitioner's supplemental objection (document no. 53).

Respondent's Memorandum in Support of Summary Judgment (document

no. 48-2) at 17 (citations omitted).  The State then argues that,

in light of the foregoing:

> [I]t is clear that the court did not make a scientific
> finding or rule on the admissibility of the
> photographs, but instead, ruled only that the
> photographs were sufficiently clear to be of use to the
> expert, and not so critical that [the victim] should be
> compelled to submit to being photographed again or to a
> physical examination.

Id.  Finally, the State points out that the (allegedly) improper

evidentiary ruling had no effect on Pandolfi's trial.

Specifically, it notes that the judge who ruled on Pandolfi's

motion to compel additional photographs – the "motion judge" –

was not the judge who presided over Pandolfi's trial and:

> the photographs were admitted without objection,
> without any findings by the trial judge, and without
> reference to the motion judge's comments about the
> scar.  Therefore, the admission of the photographs was
> in no way linked to the prior findings [by the motion
> judge].  Further, whether a thin, shallow cut by a
> razorblade was capable of causing that type of scar was
> not a scientific matter beyond the ken of the average
> juror.  See United States v. Shirey, 359 U.S. 255, 261
> (1959) (the term scientific refers to issues "beyond
> the ken of the average man"); see also Fed. R. Ev. 702;
> N.H. R. Ev. 702.  In addition, [the victim] laid a
> sufficient foundation for the admission of the
> photographs when she identified them as photographs
> depicting part of the scar on her chest, which had been
> taken in 1996 or 1997.  Moreover, even if the
> photographs had been improperly admitted, [the victim]
> testified about the cause of the scar, and showed the
> scar to the jury.  Therefore, the pictures depicted

only what the jury had already seen, and it could make
its own assessment of whether the type of injury
described by [the victim] could have caused the type of
scar they saw.

Id. at 18 (citations omitted).


In response to the State's argument, Pandolfi has failed to
demonstrate that the motion judge made impermissible "forensic
and scientific findings," nor has he shown that the trial court's
(alleged) error in improperly admitting evidence against him
(i.e., the photographs) was so grave as to have infringed upon
any of his constitutional rights.  Consequently, as to those
claims, he is not entitled to habeas relief.


    B.   Ineffective Assistance of  Counsel

    To prevail on an ineffective assistance of counsel claim, a
petitioner must "show, by a preponderance of the evidence, that
[his or her] trial counsel's conduct fell below the standard of
reasonably effective assistance and that counsel's errors
prejudiced the defense."  Gonzalez–Soberal v. United States, 244
F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington,
466 U.S. 668, 687 (1984)).  See also Cofske v. United States, 290
F.3d 437 (1st Cir. 2002).  In assessing the quality of counsel's
representation, the court employs a highly deferential standard

of review and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (citation and internal quotation marks omitted).

In other words, to satisfy the first prong of the Strickland test, a petitioner must demonstrate that his counsel made errors that were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Smullen v. United States, 94 F.3d 20, 23 (1st Cir. 1996) (quoting Strickland, 466 U.S. at 687)).  And, to satisfy the second prong of the Strickland test, a petitioner must show "actual prejudice."  As the court of appeals has observed, "prejudice exists in a particular case when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Gonzalez-Soberal, 244 F.3d at 278 (citation and internal quotation marks omitted).  A reasonable probability is "one sufficient to undermine confidence in the outcome."  Id. (citation omitted).

11

In his habeas petition, Pandolfi asserts that trial counsel was ineffective for a variety of reasons.  Specifically, he challenges counsel's: failure to object to the court's "scientific finding" that resulted in the admission of the photograph of the victim's scar; failure to present evidence Pandolfi says proves that his victim became pregnant by him four years after the attack (alleged evidence Pandolfi presumably believes would have impeached the victim's claim that she was frightened of him); failure to obtain police records of all prosecution witnesses; waiver of a probable cause hearing without Pandolfi's consent; and failure to obtain DNA samples from individuals Pandolfi says actually committed the crime.  He also claims that his appellate counsel provided constitutionally deficient representation by filing pleadings on Pandolfi's behalf while acting under a conflict of interest.

Most of Pandolfi's claims are either without factual support or so plainly meritless as to warrant no discussion.  For example, his claim regarding DNA evidence is illogical.  Because the victim did not report Pandolfi's assault upon her until years after the crime, none of the assailant's DNA was collected from the victim or the crime scene.  Consequently, Pandolfi's notion that DNA samples from other individuals would prove his innocence

is simply incorrect.  It naturally follows that if Pandolfi did,
in fact, ask defense counsel to obtain such DNA samples and
counsel refused, such a refusal did not amount to ineffective
assistance.

In any event, Pandolfi's ineffective assistance of trial
counsel claims were fully addressed by the state superior court,
in its order dated November 1, 2005.  In that order, the court
(Mohl, J.) properly identified the governing federal law and
applied that law to the facts presented in an entirely reasonable
and appropriate manner.  Pandolfi has failed to show how the
state court erred in resolving that claim.  And, more importantly
for purposes of his habeas petition (and this court's de novo
review of his claims), he has not carried his burden as to either
prong of the <u>Strickland</u> test as to his claims that trial and
appellate counsel were ineffective.  <u>See</u> Respondent's Memorandum
in Support of Summary Judgment (document no. 48-2) at 20-29
(discussing each of Pandolfi's various ineffective assistance
claims).  Accordingly, having considered those claims de novo,
the court concludes that neither Pandolfi's trial counsel nor his
appellate counsel provided constitutionally deficient
representation.

13

C.   <u>Prosecutorial Misconduct</u>

Next, Pandolfi asserts that the county prosecutor engaged in misconduct by knowingly presenting false evidence to the grand jury. Specifically, Pandolfi says, "[s]tatements given to the grand jury were consistently in error were [sic] age was concerned by showing conspiratorial consistency in these motivated statements." Petition at 12. The State plausibly construes Pandolfi's pleading to assert that the prosecutor engaged in misconduct by knowingly presenting false evidence to the grand jury about the victim's age. <u>See</u> Respondent's Memorandum in Support of Summary Judgment at 29.

The indictment returned by the grand jury belies Pandolfi's claim. In it, the grand jury charged that, between January 1 and February 28, 1989, Pandolfi forcibly raped his victim, "whose date of birth is 10/14/74, by holding her down using superior physical strength, cutting her chest with a razor blade, and slapping her repeatedly across the face." <u>Id</u>., Count I. In Count II of that indictment, the grand jury referenced the victim as "a 14 year-old girl whose date of birth is 10/14/74." <u>Id</u>. Pandolfi does not dispute that his victim was born in October of 1974, as alleged in the indictment. Consequently, he is incorrect in asserting that the grand jury was misinformed as to

14

her age.  On the date of the assault, Pandolfi's victim was 14
years-old.


    D.  <u>Confrontation of Witnesses</u>

    As construed by the Magistrate Judge, Pandolfi's petition
next alleges that he was denied the right to confront and cross-
examine witnesses against him when the trial judge denied him
access to the victim's grand jury testimony, her prior trial
testimony, and her various statements to the police – all of
which, says Pandolfi, he could have used to impeach her testimony
at the second trial.  Specifically, Pandolfi says his "[r]ight to
confrontation and cross-examination have been denied to me.
Judge Fauver [the presiding judge at Pandolfi's second trial]
stated 'it doesn't matter what [the victim] said then, it only
matters what she's saying now' referring to all of the
testimonial evidence given to police and a grand jury."  Petition
at 11.


    In response, the State says that, despite a comprehensive
review of the trial transcript, it has been unable to locate any
such statement by Judge Fauver.  Nor does there appear to be any
evidence in the record supporting Pandolfi's broader claim that
he was denied evidence which might have had impeachment value.

Pandolfi has not, for example, pointed to any discovery motions
seeking the victim's statements or prior testimony that were
denied by the trial court.  Moreover, says the State, "defense
counsel extensively cross-examined [the victim] on discrepancies
between her testimony at trial and her prior statements and
testimony."  Respondent's memorandum at 19 (citations omitted).
And, finally, the State points out that the victim's "prior
[written] statements and transcripts [of her prior trial
testimony and of audio and video interviews] were admitted into
evidence and provided to the jury."  <u>Id</u>. (citations omitted).
Accordingly, the State asserts that there is no factual basis for
Pandolfi's claim that he was denied materials necessary to
effectively cross-examine the victim.  <u>Id</u>.  The court agrees.

Unfortunately, Pandolfi does not respond to the State's
assertion and has failed to point the court to the transcript in
which it might find the statement he attributes to the trial
judge.  More importantly, however, Pandolfi has failed to
specifically identify the impeachment evidence he claims he was
denied, nor has he shown that such (alleged) evidence was
material.  And, as the court of appeals has noted:

> Impeachment evidence must be material before its
> suppression justifies a new trial.  The suppression of
> impeachment evidence is "material" when a reasonable

> probability exists that the result of the trial would
> have been different if the suppressed documents had
> been disclosed to the defense.  A "reasonable
> probability" exists if the Government's evidentiary
> suppression undermines confidence in the verdict.

Conley v. United States, 415 F.3d 183, 188 (1st Cir. 2005)

(citations and internal punctuation omitted).  Here, as the State

notes, Pandolfi's trial counsel had complete access to the

victim's written statements to the police, transcripts of her

prior testimony, and transcripts of her audio and video-taped

interviews.  And, counsel used that material extensively at trial

in an effort to impeach the victim's testimony.  Given that fact,

particularly in light of Pandolfi's failure to identify the

impeachment evidence he believes was wrongly suppressed and his

failure to discuss how such (alleged) impeachment evidence might

undermine confidence in the jury's verdict, Pandolfi is not

entitled to habeas relief on that claim.


    E.   Unconstitutional Sentence

Following his convictions, Pandolfi was sentenced to serve

7½ to 15 years on the felony count, and consecutive sentences of

12 months on each of the two misdemeanor counts, followed by two

years of probation on each misdemeanor count – the maximum

sentences then allowed by New Hampshire law.  See N.H. Rev. Stat.

Ann. 651:2 (1989).

In attacking those sentences, Pandolfi first alleges that they are "vindictive" because they are substantially greater than what he says the prosecutor offered him during plea negotiations. In other words, it seems Pandolfi claims that he is being unfairly (and unconstitutionally) punished for having rejected the prosecutor's plea offer, asserted his innocence, and gone to trial. The Supreme Court has, however, explicitly rejected such a claim, explaining that:

> [T]here is no <u>per se</u> rule against encouraging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea. The plea may obtain for the defendant the possibility or certainty not only of a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty, but also of a lesser penalty than that <u>required</u> to be imposed after a guilty verdict by a jury.

<u>Corbitt v. New Jersey</u>, 439 U.S. 212, 218-20 (1978) (citations and internal punctuation omitted) (emphasis in original). Accordingly, the Court noted:

> While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is an inevitable – and permissible – attribute of any legitimate system which tolerates and encourages the negotiation of pleas. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at

18

the bargaining table is to persuade the defendant to
forgo his right to plead not guilty.

Id. at 220-21 (citations and internal punctuation omitted).[2]


Next, Pandolfi claims his sentences violate his
constitutional rights because the sentencing judge relied upon
unsubstantiated allegations contained in the sentencing report.[3]
But, despite Pandolfi's allegation to the contrary, the judge
unequivocally stated that he was not taking those allegations
into account when calculating Pandolfi's sentence.  Specifically,
at the close of counsels' arguments on sentencing (during which
the uncharged misconduct was referenced), the judge said, "All
right.  I am not considering anything which is unsubstantiated
even though the State suggests that the door has been opened.  I
will not consider that in imposing sentence."  Transcript of

---

[2]    There is, of course, an extremely limited class of cases in
which the Court has held that an individual's constitutionally
protected rights might be infringed when the statutorily
prescribed maximum available sentence following a guilty plea is
substantially less than the sentence prescribed for an individual
who goes to trial and is found guilty (e.g., life imprisonment
vs. death penalty).  See, e.g., United States v. Jackson, 390
U.S. 570 (1968).  Pandolfi's case does not, however, fit into
that very narrow category.

[3]    Those allegations concern a claim that Pandolfi sexually
assaulted an eight-year-old girl.  The record suggests that
police investigated that claim, but the girl was either unable or
unwilling to cooperate.  Accordingly, no charges were filed
against Pandolfi.

Sentencing Hearing at 22.  Rather, the judge explained that he

was imposing the maximum sentences allowed by law because:

> I've been doing this for a little over six years now at
> the Superior Court level, and I have no hesitation to
> say that the offense which was committed was probably
> one of the most violent that I've seen, and I've tried
> a number of sexual assault and aggravated felonious
> sexual assault cases.  There is no question in my mind,
> based on the evidence that was presented, that you
> placed this victim in fear not only for her safety and
> her life on that day, but also traumatized her so as to
> affect her . . . . for the rest of her life to a
> substantial degree.  For the want of any better word,
> sir, it was a depraved act and it was an act which
> . . . carried with it a level of brutality which,
> frankly, was somewhat shocking.

Id. at 23-24.  Among other things, the sentencing court also

noted that:

> Usually I put on top of the list the reason for
> sentencing as being one of rehabilitation, but in this
> situation, sir, I think that I've got to take and put
> on top of that list the need to protect the public
> because in my opinion, sir, you're a very violent man
> and the public needs to be protected from you.
>
>                          * * *
>
> I don't know what more I can say other than to say that
> my only regret in imposing this sentence is that I
> cannot do more; I cannot impose a greater sentence than
> I'm going to impose because I'm going to give you every
> minute at the State Prison that I possibly can and I'm
> going to give you every minute after the State Prison
> that I possibly can, consistent with the limitations
> that I have imposed upon me by the laws of this State,
> because you deserve every minute that I'm going to give
> you.

Id. at 25–26.

Plainly, then, the sentencing judge was aware of the statutorily prescribed maximum sentences that were available for Pandolfi's three crimes of conviction, he consciously and deliberatively chose to impose those maximum sentences, and he explained his reasons for doing so.  Equally plain is the fact that the sentencing judge did not rely on any unsubstantiated evidence of uncharged misconduct in imposing the sentences that he did.

## Conclusion

Having reviewed each of Pandolfi's habeas claims de novo, the court concludes that, for the foregoing reasons as well as those set forth in the State's memoranda, he is not, as a matter of law, entitled to habeas relief as to any of the claims set forth in his petition.  His motion for summary judgment (document no. 35) is, therefore, denied.  The State's motion to dismiss count ten and a portion of count seven (document no. 38) is granted, as is the State's motion for summary judgment (document no. 48).  Pandolfi's motion for a hearing (document no. 60) is denied as moot, as is his "motion requesting status" (document no. 68).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
Chief Judge

August 6, 2008

cc:  William J. Pandolfi, <u>pro</u> <u>se</u>
     Susan P. McGinnis, Esq.